J-S31002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.B.R. A/K/A A.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | : : : : : : : : | |
| | : | No. 3554 EDA 2017 |

Appeal from the Order Entered September 26, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-002630-2011,
CP-51-AP-00000592-2017, CP-51-DP-1000223-2016

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 16, 2018**

A.B. ("Mother") appeals from the trial court's order entered on September 26, 2017, granting the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate Mother's parental rights to A.A.B.R. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).  After careful review, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The family in this case became involved with DHS before Child's birth in 2015, when DHS substantiated and validated General Protective Services ("GPS") reports against Mother. Mother voluntarily relinquished her rights to three siblings of the Child on January 29, 2013, and June 24, 2015.  At the time, Mother was transient, had no employment, and failed to successfully complete a dual diagnosis program.  Child was born [in] March [of] 2015.  DHS received a GPS report on March 29, 2015, that Mother tested positive for benzodiazepines and Child

tested positive for Percocet; Mother admitted to taking both benzodiazepines and Percocet; Mother claimed that she was prescribed Xanax, a benzodiazepine, by her psychiatrist; Mother claimed that she was prescribed Percocet by a doctor for back pain but could not recall the name of her doctor or the name of the clinic where she received her prescription; Mother claimed that she stopped taking Percocet in January, 2015; Mother and Child were discharged from the hospital on March 30, 2015; Mother was diagnosed with depression and anxiety. The GPS report was validated. Child was discharged to Mother's care, and Mother and Child began residing with maternal aunt on April 20, 2015. Community Umbrella Agency ("CUA"), Wordsworth, began providing In-Home Services on this date.

On June 2, 2016, DHS filed an urgent dependency petition for Child due to concerns of Mother continuing to use drugs and Mother not enrolling in treatment. On June 10, 2016, Child was adjudicated dependent and fully committed to DHS. Child was placed in kinship care with maternal aunt. Mother was offered liberal supervised visits as arranged, supervised by maternal aunt, in addition to two supervised visits at the agency. Trial court ordered DHS to explore mother/baby placements. Mother was referred to the Clinical Evaluation Unit ("CEU") for a forthwith drug screen, assessment, monitoring, and three random drug screens prior to the next court date. Additionally, Mother was referred to Behavioral Health Services ("BHS") for a consultation and evaluation. Mother was referred to the Achieving Reunification Center ("ARC") for housing, parenting, and any other appropriate services.

Following the adjudicatory hearing, Mother completed a short-term detoxification program at Kensington Hospital and was accepted into a mother/baby treatment program through Gaudenzia. Child was reunified with Mother at Gaudenzia on August 9, 2016. The reunification was conditioned upon [Mother] remaining at Gaudenzia. On August 21, 2016, Mother left Gaudenzia with Child against medical advice. On August 23, 2016, CUA made contact with Mother by telephone. Mother refused to disclose her location to CUA and hung up when CUA could not promise that Child would not be removed from Mother's care if Mother brought Child to the agency. On August 31, 2016, [the] trial court discharged the commit retroactive to August 9, 2016, ordered the petition to remain open, and ordered DHS to obtain an [Order of Protective Custody ("OPC")] once Child was

located. The trial court ordered Mother to be re-referred to CEU for a forthwith drug screen, assessment, and for a parenting capacity evaluation ("PCE").

On September 15, 2016, Mother brought Child to DHS and DHS obtained an OPC for Child. On September 16, 2016, a shelter care hearing was held for Child. Mother did not attend this hearing. The court lifted the OPC, discharged the temporary commitment, and re-committed Child to DHS. The court referred Mother to the CEU for a forthwith drug screen, dual diagnosis assessment, and three random drug screens prior to the next court date.

On December 13, 2016, a permanency review hearing was held for Child. Mother attended this hearing. The trial court noted that Mother was minimally compliant with her objectives. CUA testified that Mother had enrolled in a dual diagnosis treatment program at Casa de Consejeria on August 30, 2016, but she was not consistently attending; Mother tested positive for marijuana, benzodiazepines, and phencyclidine ("PCP"); Mother was discharged from the ARC for parenting after she failed to avail herself for a home assessment; Mother attended half of her offered visits with Child; and Mother had an open bench warrant. The trial court ordered Mother to be re-referred to CEU for a drug screen, dual diagnosis assessment, and three random drug screens. Mother was ordered to provide documentation as to parenting classes and employment. Mother was ordered to attend supervised weekly visits at the agency. Additionally, Mother was ordered to attend her PCE on December 14, 2016.

The CEU issued a progress report for Mother on March 15, 2017. The report noted that Mother tested positive for marijuana, benzodiazepines, and PCP on December 13, 2016; Mother was enrolled in intensive outpatient ("IOP") treatment through Casa de Consejeria but failed to attend her update of treatment appointment on December 30, 2016; Mother last attended IOP treatment on January 10, 2017; and Mother was recommended to participate in a higher level of treatment due [to] her many positive drug screens. Mother failed to attend the permanency review hearing held for Child on May 15, 2017. CUA testified that Mother was discharged from Casa de Consejeria on February 10, 2017; Mother failed to avail herself for a home assessment; Mother was discharged from the ARC; and Mother had only attended three visits with Child since December 13, 2016. The

trial court noted that Mother was non-compliant with her objectives and decreased her visitation with Child to monthly supervised visits at the agency. Mother was re-referred to the CEU for a drug screen, dual diagnosis assessment, and three random drug screens when she availed herself. Additionally, Mother was ordered to comply with parenting and attend part two of the PCE.

Child has been in DHS custody since June 10, 2016. Mother has failed to comply with any of her objectives. Mother failed to graduate past weekly supervised visitation with Child and had her visits reduced at the last permanency hearing to monthly. Mother has not attended a supervised visit at the agency since February 15, 2017. Drug and alcohol, mental health, parenting, and housing are still outstanding objectives for Mother. DHS filed a petition to involuntarily terminate Mother's parental rights and change Child's permanency goal to adoption on May 25, 2017.

On September 26, 2017, the trial court held the termination and goal change trial for Child. Mother was present for this hearing. The court found clear and convincing evidence to change the permanency goal to adoption and to involuntarily terminate Mother's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). On October 26, 2017, Mother's attorney filed this appeal on behalf of Mother.[1]

Trial Court Opinion, 12/28/17, at 1-4.

Mother presents the following issues for our review:

1. Whether the trial court's ruling to involuntary terminate [Mother's] parental rights to her child, A.A.B.R., was not supported by clear and convincing evidence establishing grounds for involuntary termination?

2. Whether the trial court's decision to change A.A.B.R.'s permanency goals from reunification with the parent to adoption was not supported by the clear and convincing evidence that such decision would best protect the child's needs and welfare?

_____

[1] Mother also filed a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother's Brief at 5.

We consider Mother's issues according to the following standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, and it requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Mother's issues challenge the termination of her rights under Section 2511(a). We need agree with the trial court only as to any one subsection of

Section 2511(a) in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we conclude that the certified record supports the order pursuant to Section 2511(a)(2), which provides as follows:

> **(a)** **General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Regarding Section 2511(a)(2), this Court has stated as follows:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

**In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

Further, we have opined that "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **In re A.L.D.**, 797 A.2d 326,

337 (Pa. Super. 2002) (citations omitted). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *Id.* at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.*

On appeal, Mother argues that her "substantial compliance with DHS, her completion and compliance [with] most of her main [single case plan ("SCP")] objectives, and her maintaining regular and loving contact and nurturing parental relationship with her child does not demonstrate 'clear and convincing' evidence" of her repeated and continued incapacity, abuse, neglect, or refusal. Mother's Brief at 24. Mother asserts that to the contrary, the evidence of record demonstrates her earnest desire to comply with DHS, maintain a parental relationship with Child, and seek reunification. *Id.* at 24. Mother maintains that she regularly visited Child "to the best of her ability," and secured suitable housing for herself and Child without any assistance from DHS or CUA. *Id.* at 23.

Finding that Mother's conduct warranted termination under Section 2511(a)(2), the trial court stated as follows:

> Child has been in care since June 10, 2016. Mother's SCP objectives were to make herself available for court ordered supervised visits with Child at the agency, maintain contact with the case manager, attend all court hearings, comply with all court orders, enroll in a dual diagnosis program, provide documentation of program compliance and drug screen results, and attend ARC for parenting and housing. Mother was ordered to complete a PCE. Mother's objectives have been the same for the life of the

case and Mother was aware of the objectives. Mother has failed to attend scheduled supervised visits with Child since February 15, 2017. Mother had no explanation why she failed to visit with Child. Mother's drug screen was positive for benzodiazepine, PCP, and marijuana. Mother has not made herself available for any court ordered random drug screens. Mother has not successfully completed a dual diagnosis drug and alcohol program. Mother continues to be addicted to PCP. Mother has failed to consistently engage in parenting and housing classes at ARC. Mother also failed to complete her PCE. On September 26, 2017, the CUA Case Manager rated Mother's compliance with her SCP goals as not compliant. Child needs permanency, which Mother cannot provide. Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in order to provide Child with essential parental care, control, or subsistence necessary for physical and mental well-being. Mother left the Gaudenzia mother/baby program against medical advice. Mother would rather live with her paramour than remedy her incapacity to parent. Termination under this section was . . . proper.

Trial Court Opinion, 12/28/17, at 6-7 (internal citations omitted).

Our review of the record supports the trial court's decision. CYS removed Child from Mother's care based upon concerns regarding Mother's drug and alcohol use, untreated mental health issues, and lack of stable housing. N.T., 9/26/17, at 7-12. At the time of the termination hearing, Child was two years old. *Id.* at 5. Prior to the hearing, Child had been in care for fifteen and one-half months. *Id.* Testimony at the hearing established that Mother failed to comply with her objectives for reunification. *Id.* at 8. At the time of the hearing, drug, alcohol, and mental health issues remained a concern. *Id.* at 9. Mother failed to make herself available for random drug screens. *Id.* Mother was referred to ARC for parenting and housing assistance, but due to her failure to consistently attend, her case at ARC was

closed. *Id.* at 10. Mother failed to complete a mother/baby placement program at Gaudenzia. *Id.* While in the program, Mother tested positive for drugs. *Id.* at 10-11. She completely left the program after being reunified with Child for only twelve days when she learned that her paramour had obtained housing. *Id.* at 11. Mother never progressed beyond supervised visits with Child after Child was placed. *Id.* Mother was inconsistent with her visits with Child, and at the time of the hearing, the last time she had seen Child at the agency was February 15, 2017. *Id.* The caseworker rated Mother's compliance level as "none." *Id.*

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to Section 2511(a)(2). Mother's repeated and continued incapacity, neglect, or refusal to perform her parental duties has caused Child to be without essential parental care, control, or subsistence necessary for his physical and mental well-being. Mother's failure to meet her objectives supports the trial court's conclusion that Mother refuses to remedy the conditions that led to Child's placement.

Having determined that Mother's parental rights were properly terminated under Section 2511(a)(2), we engage in the second part of the analysis pursuant to Section 2511(b) in which we determine whether termination serves the best interests of the child. *In re L.M.*, 923 A.2d at 511. We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on

the child. *In re Adoption of C.L.G*., 956 A.2d 999, 1008 (Pa. Super. 2008).

In reviewing the evidence in support of termination under Section 2511(b),

our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M*., 71 A.3d 251, 267 (Pa. 2013).

Mother argues that DHS did not present clear and convincing evidence

that termination of her parental rights would meet the best interests and

developmental, physical, and emotional needs and welfare of Child. Mother's

Brief at 28. Mother further asserts:

> [m]inimal superfluous testimony by the current case manager, who had been only observed [sic] minimal visitation and contact between [Appellant] and [Child]. This was the only evidence presented regarding the harm termination of mother's parental rights and placing them for adoption would have on [Child]. Appellant is successfully raising her two other minor age children in a proper home that DHS never visited. Due to this lack of supporting evidence the trial court did not give primary consideration to the developmental, physical and emotional needs of [Child].

Mother's Brief at 28. Mother maintains that the non-expert social worker was

incorrectly allowed to offer opinion testimony as to relationship and bond

between Appellant and Child. *Id.* at 29. Mother also contends that Child refers to her as "mom" and that the two share a loving bond. *Id.* Mother asserts that she loves Child and wants to be reunified with him. *Id.* at 29-30. As a result, Mother states, Child would experience significant trauma and emotional harm if her parental rights were terminated. *Id.* at 30.

The trial court made the following determinations relative to the bond, or lack thereof, between Mother and Child, and the best interests of Child:

> Mother's drug screen was positive for benzodiazepine, PCP, and marijuana. Mother admitted to smoking PCP as late as two months prior to trial. Mother has not made herself available for any court ordered random drug screens. Mother has not successfully completed a dual diagnosis drug and alcohol program. Mother left the Gaudenzia mother/baby program against medical advice. Mother chose her paramour rather than remedy her incapacity to parent. Mother has failed to consistently engage in parenting and housing classes at ARC. Mother failed to complete her PCE. Mother has failed to attend scheduled supervised visits with Child since February 15, 2017, without any reasonable explanation. The trial court changed Mother's visits from weekly to monthly supervised at the agency. Throughout the case, Mother only made seven out of twenty-two visits. On multiple occasions, Mother would call the agency twenty-four hours prior to confirm the scheduled visit with Child, but would either fail to appear or arrive late to the scheduled visit. CUA would offer Mother tokens for public transportation [to] attend visits. Child is currently placed in a stable, loving kinship home with maternal cousin and [Child's] half-sibling. Child has been in this home since June 2016. Child is thriving in the kinship home with his half-sibling. Kinship parent ensures that his daily needs are being met. It is in the Child's best interest to be adopted and this kinship parent is a pre-adoptive resource. Child would not suffer any irreparable harm if Mother's rights were terminated and it is in the Child's best interest to be adopted by the current kinship parent. The Child needs permanency, which Mother cannot provide at this time. The DHS witness was credible. The record established by clear and convincing evidence that the change of the permanency goal from reunification to adoption was proper.

> The trial court did not err or abuse its discretion when it changed the goal from reunification to adoption.

Trial Court Opinion, 12/28/17, at 11-12 (internal citations omitted).

After a careful review of the record in this matter, it is our determination that the record supports the trial court's factual findings, and the trial court's conclusions are not the result of an error of law or an abuse of discretion with regard to Section 2511(b). Accordingly, it was proper for the trial court to conclude that there was no bond such that Child would suffer permanent emotional harm if Mother's parental rights are terminated and that termination served the best needs of Child.

Furthermore, despite Mother's claim, the testimony of the caseworker was sufficient to establish by clear and convincing evidence that there was no bond between Mother and Child. Expert testimony on that topic was not required. When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Specifically, Mr. Burr testified that there was no relationship between Mother and Child. N.T., 9/26/17, at 12. He explained that after Child's placement, Mother had not contacted the caseworker to inquire about Child. *Id.* Mr. Burr also stated that, in his opinion, Child would not suffer any irreparable harm if Mother's parental rights were terminated. *Id.* This testimony was sufficient to establish that there was no bond between

Mother and Child such that Child would suffer permanent emotional harm if Mother's parental rights were terminated.

For the reasons set forth above, we conclude that Mother is entitled to no relief. Therefore, we will not disturb the trial court's determination, and we affirm the order involuntarily terminating Mother's parental rights to Child.

Order affirmed.

Judge Dubow did not participate in the consideration or decision of this Memorandum.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/18